UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EASTERN SHAWNEE TRIBE OF OKLAHOMA, ) ) ) | |
| Plaintiff, ) ) ) | |
| v. ) ) | Case No. 11-CV-0675-CVE-TLW |
| JON D. DOUTHITT, Magistrate Judge of the Court of Indian Offenses, Miami, Oklahoma, in his Official and Individual Capacities, and THE COURT OF INDIAN OFFENSES FOR THE EASTERN SHAWNEE TRIBE OF OKLAHOMA, ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Now before the Court is Defendants' Motion to Dismiss and Brief in Support (Dkt. # 16). Defendants argue that the Court lacks subject matter jurisdiction over this case because plaintiff is asking the Court to resolve an internal tribal dispute. They also assert that they have not waived their sovereign immunity from suit and that plaintiff's claims should be dismissed. Plaintiff responds that it is asking the Court to determine whether the Court of Indian Offenses for the Eastern Shawnee Tribe of Oklahoma had jurisdiction to decide an election dispute, and this is a federal question that can be decided by this Court. They also argue that defendants are not shielded from suit by the doctrine of sovereign immunity.

**I.**

The Eastern Shawnee Tribe of Oklahoma (the Tribe) is a federally recognized Indian tribe based in Ottawa County, Oklahoma. The Tribe has enacted a Tribal constitution that has been

approved by the Bureau of Indian Affairs (BIA), but the constitution does not create a system of Tribal Courts. Instead, the constitution provides:

> Section 1. Until such time as the Business Committee determines that the Tribe is financially and otherwise prepared to maintain a separate Tribal Court, the judicial authority of the Tribe shall be exercised by the Court of Indian Offenses. The jurisdiction of the Court of Indian Offenses shall include, but not be limited to, criminal and civil jurisdiction, including settlement of tribal disputes and interpretation of this Constitution and tribal enactments.

Dkt. # 2-1, at 9. The Courts of Indian Offenses (CFR Court) were created by the Department of the Interior, and the relevant regulations governing these courts are found at 25 C.F.R. Part 11. The Tribe is under the jurisdiction of the CFR Court of the Miami Agency of the BIA. Under 25 C.F.R. § 11.118(b), a CFR Court "may not adjudicate an election dispute, take jurisdiction over a suit against a tribe, or adjudicate any internal tribal government dispute, unless the relevant tribal governing body passes a resolution, ordinance, or referendum granting the jurisdiction of the Court." In addition, "[a] tribe may not be sued in a [CFR Court] unless its tribal governing body explicitly waives its tribal immunity by tribal resolution or ordinance." 25 C.F.R. § 11.118(d).

On June 14, 2008, the members of the Tribe approved a referendum on an Initiative Measure prohibiting elected Tribal officials from receiving compensation from the Tribe in any capacity other than their elected office. Dkt. # 2-2, at 3. The Tribe's Business Committee refused to enforce the Initiative Measure. Dkt. # 2-6, at 2; Dkt. # 2-10, at 3. Instead, the Business Committee held a special meeting on January 16, 2009 and called for a referendum on an amendment to the Tribal constitution that would effectively overrule the June 14, 2008 vote. Dkt. # 2-10, at 4. In March 2009, the new amendment was approved by Tribal voters and the results of the election were certified by the Tribe's Election Board. Certain Tribal members filed a challenge to the election

2

results with the Eastern Shawnee Election Board but were unsuccessful in their efforts to have the election invalidated.

A group of Tribal members referred to by the parties as the "Enyart plaintiffs"[1] filed a complaint in the CFR Court to strike the March 2009 referendum. Dkt. # 2-4. The election dispute was based solely on Tribal law and alleged violations of the Tribe's constitution. The defendants in the CFR proceedings were Chief Glenna Wallace, the Business Committee, and the Tribe, and they filed a motion to dismiss the complaint on the grounds that the CFR court lacked jurisdiction to hear an election dispute and that the Tribe had not waived its sovereign immunity. The case was assigned to Magistrate Judge Jon D. Douthitt of the CFR Court. Magistrate Douthitt denied the motion to dismiss and ruled that the March 2009 referendum was invalid under the Tribe's constitution. Dkt. # 2-6. The Business Committee filed a motion for new trial or to stay the decision, but that motion was denied as well. Dkt. # 2-8. The Business Committee appealed Magistrate Douthitt's decision, and the Court of Indian Appeals for the Eastern Shawnee Tribe Eastern Oklahoma Region stayed Magistrate Douthitt's order while the appeal was pending. Dkt. # 2-9. The Court of Indian Appeals found that the Tribal constitution contained language "sufficient to satisfy the conditions of subsection (b) of 25 C.F.R. 11.118" and that the CFR Court had jurisdiction to hear an election dispute. Dkt. # 2-10, at 4. It also found that the Tribal defendants had waived their sovereign immunity from suit. Id. at 5-8.

On November 1, 2011, the Tribe filed this case seeking a declaratory judgment that the CFR Court lacked jurisdiction to hear the challenge to the March 2009 election results. Dkt. # 2. The

---

[1] Charles Enyart was the first plaintiff named in the case caption in the CFR Court. The remaining plaintiffs were Bud Enyart, Van Huggins, Norman Krause, Vanna Koepke, and Bud Nelson. Dkt. # 2-4, at 2.

3

Tribe also asks the Court to declare that the Tribe has not waived its sovereign immunity from suit concerning election matters. The Tribe seeks injunctive relief to enforce any declaratory judgment issued by this Court, but the Tribe is not seeking monetary damages. <u>Id.</u> at 31-33. The Tribe has named Magistrate Douthitt and the CFR Court as defendants. Defendants have filed a motion to dismiss this case for lack of jurisdiction. Dkt. # 16.

**II.**

Federal courts are courts of limited jurisdiction and, as the party seeking to invoke federal jurisdiction, plaintiff bears the burden of proving that jurisdiction is proper. <u>See</u> <u>Southway v. Cent. Bank of Nigeria</u>, 328 F.3d 1267, 1274 (10th Cir. 2003). A court lacking jurisdiction "cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." <u>Basso v. Utah Power & Light Co.</u>, 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss under Rule 12(b)(1) "generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." <u>Merrill Lynch Bus. Fin. Servs, Inc. v. Nudell</u>, 363 F.3d 1072, 1074 (10th Cir. 2004) (internal citation and quotations omitted). Here, defendants have facially attacked the sufficiency of the complaint's allegations as to the existence of subject matter jurisdiction over plaintiff's claim for declaratory and injunctive relief. In analyzing such motions to dismiss, the Court must presume all of the allegations contained in the complaint to be true. <u>Ruiz v. McDonnell</u>, 299 F.3d 1173, 1180 (10th Cir. 2002); <u>Holt v. United States</u>, 46 F.3d 1000, 1002-03 (10th Cir. 1995). This is the same standard of review applied to motions arising

under Fed. R. Civ. P. 12(b)(6). See Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).

### III.

Defendants ask the Court to dismiss this case for lack of subject matter jurisdiction on the ground that this case presents an intratribal dispute that must be resolved by tribal courts. Dkt. # 16, at 3-6. Defendants also argue that they have not waived their sovereign immunity from suit, and that plaintiff has not identified a valid waiver of sovereign immunity that would allow plaintiff to obtain declaratory or injunctive relief from defendants. Id. at 6-10. Plaintiff responds that the law is clearly settled that federal courts have jurisdiction under 28 U.S.C. § 1331 to determine whether a tribal court, including a CFR court, exceeded its jurisdiction and if the Tribe has expressly waived its sovereign immunity from suit, and it is not asking the Court to resolve the merits of any dispute under Tribal law. Dkt. # 17, at 6-12. The Tribe also argues that the federal government has waived sovereign immunity for federal officers and agencies as to claims for declaratory or injunctive relief in their official capacities, and the Tribe's claims are not barred by sovereign immunity. Id. at 20.

### A.

Defendants initially argue that the Court lacks subject matter jurisdiction to hear this case, because the Court would be required to interpret the Tribal constitution to determine the scope of the CFR Court's jurisdiction. Plaintiff responds that the federal courts ordinarily have subject matter jurisdiction to determine the boundaries of a tribal court's jurisdiction, and the same rule applies to the Tribe's claim concerning the scope of the CFR Court's jurisdiction.

It is well-established that a federal court has subject matter jurisdiction under § 1331 to determine whether a tribal court has exceeded the lawful limits of its jurisdiction. National Farmers

Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 853 (1985); Kerr-McGee Corp. v. Farley, 115 F.3d 1498, 1501 (10th Cir. 1997); Superior Oil Co. v. United States, 798 F. 2d 1324 (10th Cir. 1986). "If a federal court decides the tribal court properly exercised jurisdiction over the controversy, proper deference to the tribal court system precludes relitigation of the issues raised and resolved in the tribal courts." Davis v. Mille Lacs Band of Chippewa Indians, 193 F.3d 990, 991-92. (8th Cir. 1999). A party seeking to litigate the issue of tribal court jurisdiction must fully exhaust its tribal remedies before filing a case in federal court. Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 16-17 (1987); Texaco, Inc. v. Zah, 5 F.3d 1374, 1376 (10th Cir. 1993).

In this case, the Tribe is challenging the jurisdiction of the CFR Court to hear an election dispute. CFR courts are created by federal regulation, and "[d]esignated CFR courts that have not been supplanted by independent tribal courts pursuant to the provisions of 25 C.F.R. § 11.1(d) retain some characteristics of an agency of the federal government." Tillett v. Lujan, 931 F.2d 636, 640 (10th Cir. 1991). "CFR courts, however, also function as tribal courts; they constitute the judicial forum through which the tribe can exercise its jurisdiction until such time as the tribe adopts a formal law and order code." Id. For the purpose of federal subject matter jurisdiction, federal courts have exercised jurisdiction over disputes concerning whether a CFR court has exceeded its lawful jurisdiction. United States Bancorp v. Ike, 171 F. Supp. 2d 1122, 1125-26 (D. Nev. 2001).

Defendants concede that federal courts ordinarily have jurisdiction to consider whether a tribal court has exceeded its jurisdiction, and they do not contest that the Tribe has fully exhausted its remedies in the CFR Court before filing this case. Dkt. # 20, at 1. However, defendants argue that this case concerns a purely intratribal dispute and the Court should refrain from exercising jurisdiction over the case. Dkt. # 16, at 4. Defendants rely on Wheeler v. Swimmer, 835 F.2d 259

(10th Cir. 1987), to support their argument that the Court lacks jurisdiction to hear this case. In Wheeler, the Tenth Circuit considered whether the district court properly declined to hear a dispute arising out of a tribal election. Unsuccessful candidates for various offices in a tribal election challenged the results of the election and the subsequent certification of the results using procedures provided by the tribe and the BIA, and these challenges did not change the outcome of the election. Id. at 260. The unsuccessful candidates then filed a case in federal district court alleging violations of the Indian Civil Rights Act, 25 U.S.C. §§ 1301-1302, the Constitution of the United States, and the treaty, constitution, and laws of the Cherokee Nation. Id. The district court declined to hear the case on the ground that it presented an intratribal dispute, and the court granted a motion to dismiss for lack of subject matter jurisdiction. The Tenth Circuit found that federal courts should not interfere with a tribal election when there is a tribal forum to resolve such disputes. Id. at 262. Citing a general policy of non-interference with tribal self-government, the Tenth Circuit held that the election dispute should have been resolved by tribal courts or forums, and the aggrieved candidates were required to seek relief from the tribe itself. Id. at 262. The aggrieved candidates did not asks the Tenth Circuit to consider whether the tribal courts had jurisdiction over the election dispute, and this was not presented as a basis for the district court to exercise subject matter jurisdiction over the dispute.

      This case is distinguishable from Wheeler, because the claims raised in the Tribe's complaint here are considerably more narrow than the election dispute at issue in Wheeler. The Court has thoroughly reviewed the complaint, and the Tribe is not asking the Court to affirm the results of the March 2009 referendum. Instead, the Tribe is arguing that the CFR Court lacked jurisdiction to hear a challenge to the results of the March 2009 referendum, and that this is a federal question allowing

this Court to exercise jurisdiction under § 1331. In fact, this presents a more direct federal question than the ordinary case in which a federal court is asked to determine whether a tribal court has jurisdiction, because the CFR Courts are created by federal regulations and this Court will be required to interpret federal regulations to resolve the jurisdictional dispute. There is an underlying substantive issue as to whether the language in the Tribal constitution is intended to confer on the CFR Courts jurisdiction over election disputes, but the resolution of that issue will turn on the specificity of a tribal resolution required as a matter of federal law to grant CFR Courts jurisdiction over election disputes. The Tribe's complaint raises a federal question as to the scope of the CFR Court's jurisdiction, and the Court has jurisdiction to hear this case under § 1331.[2]

**B.**

Defendants argue that they are entitled to sovereign immunity from suit, because federal employees and agencies acting in their official capacities have the same immunity from suit as the federal government. Plaintiff asserts that defendants acted outside of their legal authority and that their sovereign immunity is waived under the ultra vires doctrine. Plaintiff also argues that the United States and its agencies and officers have waived sovereign immunity from suit for claims for declaratory or injunctive relief under the Administrative Procedures Act, 5 U.S.C. § 701, and that the APA's broad waiver of sovereign immunity, found in 5 U.S.C. § 702, applies in this case.

The United States is a sovereign that is immune from suit unless it consents to be sued. Sydnes v. United States, 523 F.3d 1179, 1182-83 (10th Cir. 2008). Sovereign immunity also generally shields from suit federal agencies and officers acting in their official capacity. See

---

[2] To the extent that resolution of this matter would require interpretation of purely Tribal law, the Court will defer to the findings of the CFR Court when resolving the federal question raised in plaintiff's complaint.

Wyoming v. United States, 279 F.3d 1214, 1225 (10th Cir. 2002). "[C]onsent may be found 'only when Congress unequivocally expresses its intention to waive the government's sovereign immunity in the statutory text.'" Rural Water Dist. Wagoner County No. 2 v. Grand River Dam Authority, 577 F.3d 1255, 1260 (10th Cir. 2009). General jurisdictional statutes, such as 28 U.S.C. § 1331, do not waive the government's sovereign immunity from suit. Normandy Apartments, Ltd. v. United States Dep't of Housing and Urban Development, 554 F.3d 1290, 1295 (10th Cir. 2009); Eagle-Picher Indus., Ind. v. United States, 901 F.2d 1530, 1532 (10th Cir. 1990).

Plaintiff argues that defendants exceeded their legal authority by exercising jurisdiction in violation of § 11.118, and that this strips defendants of their sovereign immunity. Dkt. # 17, at 20. In Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949), the Supreme Court recognized that certain claims against government officials may not be claims against the sovereign if the "officer purports to act as an individual and not as an official . . . ." Id. at 689. An officer's actions may be considered ultra vires and not within the scope of his official duties if he "is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden." Id. This exception does not apply if the officer is acting within the scope of his duties but commits an error when exercising the powers delegated to him. United Tribe of Shawnee Indians v. United States, 253 F.3d 543, 548 (10th Cir. 2001); Painter v. Shalala, 97 F.3d 1351, 1359 (10th Cir. 1996). "Official action is not ultra vires or invalid 'if based on an incorrect decision as to law or fact, if the officer making the decision was empowered to do so.'" Wyoming, 279 F.3d at 1229-30 (quoting Larson, 337 U.S. at 695). To show that the ultra vires doctrine applies, a plaintiff "must allege facts sufficient to establish that the officer was acting 'without any authority whatever,' or without any 'colorable basis for the exercise of authority.'" Danos v. Jones, 652 F.3d

9

577, 583 (5th Cir. 2011) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984)).

The ultra vires exception does not apply in this case. The allegedly ultra vires act was Magistrate Douthitt's and the CFR Court's decision to assume jurisdiction over the dispute between the Enyart plaintiffs and the Tribe. However, courts are clearly empowered to make decisions concerning the scope of their jurisdiction and, even if the CFR erroneously found that jurisdiction existed, this decision was committed to Magistrate Douthitt and the CFR Court by the federal government. There are no allegations that Magistrate Douthitt acted wholly outside of his judicial capacity or that there was no colorable basis for the CFR Court to find that jurisdiction existed. Instead, plaintiff received an unfavorable ruling on a close jurisdictional issue. This is not the type of circumstance under which the ultra vires exception has been found to apply. See Petterway v. Veterans Administration Hospital, 495 F.2d 1223 (5th Cir. 1974) (veterans hospital that allegedly engaged in racial discrimination acted outside of scope of governmental authority). Plaintiff disagrees with Magistrate Douthitt's and the CFR Court's decision to exercise jurisdiction over the underlying election dispute, but this is not sufficient to show that defendants' actions were ultra vires.

Plaintiff also argues that defendants are not entitled to sovereign immunity from claims for declaratory or injunctive relief under § 702. The APA contains a waiver of sovereign immunity as to claims for declaratory or injunctive relief against government agencies and officers. Section 702 states:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee

> thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702. This statute provides a "general waiver of sovereign immunity in all civil actions seeking equitable relief on the basis of legal wrongs for which government agencies are accountable." United Tribe of Shawnee Indians v. United States, 253 F.3d 543, 549 (10th Cir. 2001). Section 702 also waives the government's sovereign immunity for "most claims for nonmonetary relief," whether the plaintiff's claims are APA or non-APA claims. See Robbins v. United States Bureau of Land Management, 438 F.3d 1074, 1080 (10th Cir. 2006). However, the scope of the waiver of sovereign immunity is limited, and § 702 does not permit a case to proceed if another statute imposes limitations on a court's power to hear a case or the relief that can be awarded. Neighbors for Rational Development, Inc. v. Norton, 379 F.3d 956, 961 (10th Cir. 2004).

Plaintiff seeks declaratory and injunctive relief only, and it appears that § 702 does provide a waiver of sovereign immunity allowing plaintiff to proceed with its claims against defendants. Defendants argue that the scope of the waiver of sovereign immunity in § 702 is limited by other provisions of the APA, and that the APA does not provide a waiver of sovereign immunity in this case. Dkt. # 20, at 11-12. Under 5 U.S.C. § 701(a)(2), the APA applies "except to the extent that . . . agency action is committed to agency discretion by law." Defendants claim that the Commissioner of Indian Affairs, under the authority of the Secretary of the Interior, has the

11

discretion to manage "all Indian affairs and . . . all matters arising out of Indian relations." 25 U.S.C. § 2. However, defendants have cited no authority suggesting that a CFR Court has discretion concerning the exercise of its jurisdiction under federal regulations. Section 11.118 states certain limits as to the jurisdiction of the CFR Court, but it contains no language suggesting that a CFR Court has the discretion to decline jurisdiction over a case properly before or to exercise jurisdiction when none exists. The CFR Court's exercise of jurisdiction over the underlying election dispute was not a discretionary act that is exempt from judicial review. The Court has reviewed defendants' motion to dismiss and reply and can discern no additional arguments concerning the application of § 702. The Court finds that defendants' sovereign immunity is waived under § 702, and that plaintiff may proceed with its claims for declaratory and injunctive relief against defendants.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss and Brief in Support (Dkt. # 16) is **denied**.

**DATED** this 22nd day of August, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE