# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EASTERN SHAWNEE TRIBE OF OKLAHOMA,<br>                  **Plaintiff**<br><br>vs.<br><br>JON D. DOUTHITT, Magistrate Judge of the Court of Indian Offenses, Miami, Oklahoma, in his Official Capacity; and THE COURT OF INDIAN OFFENSES FOR THE EASTERN SHAWNEE TRIBE OF OKLAHOMA<br>                  **Defendants,** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 11-CV-675-JED-TLW |

## OPENING BRIEF OF PLAINTIFF IN SUPPORT OF
## COMPLAINT FOR DECLARATIVE AND INJUNCTIVE RELIEF

WILLIAM R. NORMAN, OBA #14919
KIRKE KICKINGBIRD, OBA #5003
HOBBS, STRAUS, DEAN & WALKER, LLP
101 Park Avenue, Suite 700
Oklahoma City, OK  73102
405-602-9425 – Telephone
405-602-9426 – Fax
wnorman@hobbsstraus.com
kkickingbird@hobbsstraus.com
OF COUNSEL TO PLAINTIFF, EASTERN
SHAWNEE TRIBE OF OKLAHOMA

**BY:** /s/ John G. Ghostbear
JOHN G. GHOSTBEAR, OBA #3335
8210 E. Regal Court, Suite 100
Tulsa, OK  74133
918-747-6351 – Telephone
918-747-6654 – Fax
ghostlaw@ghostlaw.net
ATTORNEY FOR PLAINTIFF, EASTERN
SHAWNEE TRIBE OF OKLAHOMA

The Plaintiff, the Eastern Shawnee Tribe of Oklahoma ("**Tribe**" or "**Plaintiff**"), by and through the Eastern Shawnee Business Committee ("**Business Committee**") and its counsel, pursuant to this Court's Scheduling Order (Dkt. # 31), submits this "Opening Brief" supporting its "Complaint for Declarative and Injunctive Relief" (Dkt. #2) that this Court render a judgment[1] in its favor as requested therein.

## Statement of the Case

This case is <u>not</u> an appeal of a final decision of a federal administrative agency, even though the Scheduling Order (Dkt. #31) calls for "Opening Briefs" at this point.  The Court noted such procedure was "[f]or the convenience of the parties and the Court" while expressing concern that utilizing a procedure under F.R. Civ. P. 56 could inadvertently necessitate a trial upon the realization of a disputed material fact, despite assurances of the parties that relevant facts were undisputed and trial was unnecessary.  Importantly, the Court declared it was "not foreclosing argument as to the proper standard of review by adopting procedures applicable in the setting of an administrative appeal." Note, Sch. Order (Dkt. #31).

The Eastern Shawnee Tribe of Oklahoma ("**Tribe**") challenges the authority of its federally-administered tribal court, a Court of Indian Offenses established by the U.S. Department of the Interior and operated pursuant to federal regulations ("**CFR Court**"), to exercise jurisdiction over the Tribe and a particular case: <u>Enyart, et al v. Chief Glenna Wallace, Business Committee, Eastern Shawnee Tribe of Oklahoma</u>, CIV-2009-M05, (Court of Indian Offenses, Miami Agency) (renamed by the Court of Indian Appeals as <u>Enyart v. Business</u>

---

[1]  Even though the Court expressed a desire to utilize procedures relating to resolving an administrative appeal, Plaintiff maintains that because there is no dispute over the facts in the record and the matter is a proper original civil proceeding authorized by <u>National Farmers Ins. Co.</u> *supra*, p. 6 (and not an appeal of an administrative decision), that Summary Judgment under Rule 56 is an appropriate procedure at this point.

1

Committee for the Eastern Shawnee Tribe, No. CIV-11-M01P (Court of Indian Appeals, Miami Agency) (Collectively "**Enyart Case**").  Plaintiff contends the record fails to show a grant of jurisdiction from the Tribe to the CFR Court by resolution, ordinance or referendum as required by federal regulations to adjudicate the election dispute and/or internal tribal government dispute raised by the Enyart Case.  Additionally, Plaintiff contends the record fails to show the Tribe granted the CFR Court an explicit waiver of tribal immunity from suit as required by federal regulations to exercise jurisdiction over the Tribe or its officials in the Enyart Case.  Because federal regulations created the CFR Court and established the conditions for its exercise of jurisdiction, this Court, as the final arbiter of federal law, must interpret the federal regulations to resolve the jurisdictional dispute based on the facts already in the record.  Because the issue to be decided is a question of federal law regarding the extent of jurisdiction of the CFR Courts under federal regulations and the relevant CFR Court record is not in dispute, the case may be decided by Summary Judgment under F.R. Civ. P. 56.

## Statement of Undisputed Facts[2]

Plaintiff is the Eastern Shawnee Tribe of Oklahoma ("**Tribe**" or "**EST**"), a federally recognized Indian tribe.  The Tribe is governed by a constitution ("**EST Const.**" in citation, "**Tribe's Constitution**" or "**Constitution**" in text) adopted in 1994, pursuant to the tribe's inherent sovereign authority.  The Tribe's headquarters are located in West Seneca, Ottawa County, Oklahoma, on property held by the United States in trust for the Tribe.  The Tribe, its offices and its property are within the service area of the Miami Agency and the Eastern

---

[2]  This statement of undisputed facts is derived from the admissions and averments of Defendants in their Amended Answer (Dkt. #30) to Plaintiff's Complaint (Dkt. #2); specifically, Complaint, ¶¶ 1 - 3, 7 - 9, 13, 15 – 20, 22, 24 – 26, 31, 34, 37 – 39, 45, 53, 59, and 67.

Oklahoma Regional Office ("**EORO**") of the Bureau of Indian Affairs ("**BIA**"), United States Department of Interior ("**DOI**" or "**Interior**").

Defendant Jon D. Douthitt ("**Judge Douthitt**") is a Magistrate of the Court of Indian Offenses for the BIA EORO Miami Agency, which is located in Miami, Oklahoma.  Judge Douthitt is being sued in his official capacity.  The Court of Indian Offenses for the BIA EORO Miami Agency is established and operated by the DOI and must operate in accordance with 25 C.F.R. Part 11 ("**CFR Courts**").  The CFR Court of the Miami Agency acts as a tribal court for those Oklahoma tribes listed in 25 C.F.R. § 11.100(c) that are within the service area of the EORO Miami Agency, and specifically serves the Tribe by exercising criminal jurisdiction and civil jurisdiction, subject to those limitations set forth in 25 C.F.R. §§ 11.106, 11.114, 11.116, and 11.118.

The Tribe's Constitution, Article XIV, Section 1, authorizes popular participation in tribal government by means of initiative and referendum, both of which have been used by the Tribe's members.  (*Constitution*, Record ("**R.**") at Doc. 34-2, p. 36).  On June 14, 2008, the Tribe's voters approved an initiative ("**2008 Initiative**") that changed a long-established practice by barring the Tribe's elected officials from receiving compensation for work in any other tribal government position.  On January 16, 2009, during a special meeting of the Tribe's Business Committee ("**Business Committee**"), the Business Committee approved the calling for a referendum vote that would effectively overturn the 2008 Initiative.  Accordingly, a referendum election was scheduled for March 21, 2009 ("**2009 Referendum**").  The Tribe's voters approved the 2009 Referendum, and the Tribe's Election Board certified the results of the 2009 Referendum.  Article XI of the Constitution created the Election Board to supervise and administer tribal elections. (*Constitution*, R. at Doc 34-2, p. 32-33.).

3

On or about May 7, 2009, Charles Enyart and six other individuals, all of whom are members of the Tribe, filed a complaint in the Tribe's CFR Court, alleging procedural irregularities in the January special meeting of the Business Committee, and asking the Tribe's CFR Court to strike down the Election Board-certified 2009 Referendum. The complaint, titled Enyart, et al v. Chief Glenna Wallace, Business Committee, Eastern Shawnee Tribe of Oklahoma, No. CIV-2009-M05 ("**Enyart Case**"), was a suit against the Tribe and its elected officials. (*Petition*, R. at Doc. 34-1, p. 22). Because the Enyart Case asks the Tribe's CFR Court to adjudicate an election dispute and /or an internal tribal government dispute, it is governed by 25 C.F.R. § 11.118(b) requiring a grant of authorization from the Tribe in the form of a resolution, ordinance, or referendum. Similarly, because the Business Committee (the Tribe's legislative body) is named as a defendant, the Enyart Case is a suit against the Tribe and is governed by 25 C.F.R. § 11.118(d) requiring an explicit waiver of tribal immunity in the form of a resolution or ordinance. The Business Committee repeatedly argued in its defense that Judge Douthitt and the CFR Court lacked jurisdiction under both 25 C.F.R. § 11.118(b) and (d). (*Special Appearance*, R. at Doc. 32-1, p. 22; *Respondents Brief*, R. at Doc. 32-1, p. 7-11; *Motion for New Trial*, R. at Doc. 32-3, p. 59; *Answer of the Business Committee*, R. at Doc. 32-3, p. 32; *Supp. Motion New Trial*, R. at Doc. 33, p. 12-13; *Emergency Appeal*, R. at Doc. 33-1, p. 10; and *Special Appearance Motion to Quash*, R. at Doc. 34-1, p. 17; *Bus. Comm. Reply,* R. at Doc. 33-1, p. 21-24). However, the CFR Court continued to exercise jurisdiction.

On April 28, 2011, Judge Douthitt issued his "Order of the Court" in Enyart v. Wallace. The order concluded that "[t]he Court has jurisdiction of the parties and the subject-matter herein," without reference to 25 C.F.R. § 11.118(b) (election disputes and internal tribal government disputes) or 25 C.F.R. § 11.118(d) (sovereign immunity), and, more importantly,

4

without citation to any tribal resolution, ordinance, or referendum from the Tribe authorizing such jurisdiction or waiver of immunity. (*Order*, R. at Doc. 34-3, p. 5). On May 12, 2011, following the Tribe's motion for rehearing, Judge Douthitt issued a "Court Minute" in Enyart v. Wallace reaffirming a finding of jurisdiction without explanation. (*Court Minute*, R. at Doc. 33-1, p. 17). On May 16, 2011, Judge Douthitt issued an "Amended Order" reaffirming a finding of jurisdiction without explanation. (*Amended Order*, R. at Doc. 33-1, p. 5).

On June 30, 2011, the Tribe obtained a stay from the Court of Indian Appeals of all three Orders issued by Judge Douthitt. (*Stay*, R. at. Doc. 35-1, p. 24). The parties to the Enyart Case submitted briefs and oral arguments to the appellate panel of the CFR Court. On September 13, 2011, the appellate panel issued its "Memorandum Opinion" in the case (which it had renamed Enyart v. Business Committee of the Eastern Shawnee Tribe of Oklahoma, No. CIV-11-M01P [hereinafter "Enyart v. Business Committee"]) affirming Judge Douthitt's finding of jurisdiction. Specifically, the appellate panel concluded: 1) that a grant of jurisdiction is sufficient to serve as a waiver of tribal sovereign immunity; and 2) that the EST Constitution's grant of jurisdiction over "tribal disputes" encompasses "internal tribal government disputes" and is sufficient to meet the requirements of 25 C.F.R. § 11.118(b). (*Memorandum Opinion*, R. at Doc. 35-3, p. 6-10). An actual controversy exists between the parties regarding the assumption of jurisdiction by Judge Douthitt and the Tribe's CFR Court, over whether the Tribe has granted the CFR Court jurisdiction to adjudicate election or internal government disputes in accordance with 25. C.F.R. § 11.118(b) and whether the Tribe explicitly waived its immunity to this suit in accordance with 25 C.F.R. § 11.118(d). Absent injunctive relief from this Court, Judge Douthitt and the CFR Court intend to proceed with enforcing orders against the Tribe in Enyart v. Business Committee as remanded by the CFR Court's appellate panel in derogation of controlling federal regulations.

5

## Arguments and Authorities

I. **The Standard of Review is *de novo* and, unlike an administrative appeal, the Court, in reviewing the conclusions of law by the CFR Courts, owes no deference to such decisions.**

Whether the CFR Court exceeded its jurisdiction in the Enyart Case in derogation of Interior's regulations raises a question of federal law that this Court reviews *de novo*, and not under a more deferential standard appropriate for administrative decisions. See Mustang Production Co. v. Harrison, 94 F.3d 1382, 1384 (10th Cir. 1996) (holding that "district courts should review tribal courts' findings of fact for clear error and conclusions of law *de novo*.")  As previously established in this case, the Administrative Procedures Act (APA), 5 U.S.C. § 702, provides a general waiver of United States' immunity for claimants seeking non-monetary relief against its officers and agencies. See Opinion and Order, Dkt. 26, p.11.  Although this waiver is contained within the APA, the Tenth Circuit has determined that the Section 702 "waiver is not limited to suits under the Administrative Procedures Act."  Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1233 (10th Cir. 2005).  This action does **not** arise under the APA, but arises under the doctrine enunciated by National Farmers Union Ins. Co. v. Crow Tribe of Indians, 471 U.S. 845 (1985) (declaring the extent of tribal court jurisdiction is a federal question reviewable by federal courts). Accordingly, application of the "Section 702 waiver" does not necessitate application of the APA's standard of review when the cause of action does not arise under the APA.

"It is clear, however, that Courts of Indian Offenses are part of the Federal Government." 58 Fed. Reg. 54406, 54407 (Oct. 21, 1993) (Interior's comments adopting 25 C.F.R. Part 11), citing United States v. Red Lake Band of Chippewa Indians, 827 F.2d 380, 383 (8th Cir. 1987), cert. denied, 108 S.Ct. 1109 (1988).  Although CFR Courts are federally administered tribal courts, the decisions of such courts are **not** treated as administrative agency determinations (nor

6

entitled to deference) under either federal common law or Interior's regulations. In <u>Tillett v. Lujan</u>, a case challenging the operation and jurisdiction of another CFR Court, the Tenth Circuit held that, "once the tribal courts have acted, their determination of jurisdiction is subject to review in federal court." 931 F.2d 636, 641 (10th Cir. 1991) quoting <u>Brown v. Washoe Housing Authority</u>, 835 F.2d 1327, 1329 (10th Cir. 1988), citing <u>Iowa Mutual v. LaPlante</u>, 480 U.S. 9, 19 n. 14 (1987). In 1993, Interior clarified the restrictions on appeal processes for its CFR Courts, distinguishing CFR Court decisions from other agency actions: "Decisions of the appellate division are final and are *not subject to administrative appeals* within the Department of the Interior." 25 C.F.R. 11.200(d) (emphasis added); see also 58 Fed. Reg. 54406, 54411 (Oct. 21, 1993).

In <u>FMC v. Shoshone-Bannock Tribes</u>, the Ninth Circuit plainly described the reasoning for applying the *de novo* standard of review to a determination of jurisdiction by a tribal court or CFR Court, which the Tenth Circuit expressly adopted in <u>Mustang Production Co.</u>, *supra*:

> As to legal questions, the <u>Farmers Union</u> Court stated that the fact that a tribal court reviews a question first is helpful because other courts might "benefit [from] their expertise." <u>Farmers Union Ins. Co.</u>, 471 U.S. at 857. This indicates that federal courts have no obligation to follow that expertise, but need only be guided by it. Moreover, federal courts are the final arbiters of federal law, and the question of tribal court jurisdiction is a federal question. <u>Id</u>. at 852-53. Federal legal questions should therefore be reviewed *de novo*.

<u>FMC v. Shoshone-Bannock Tribes</u>, 905 F.2d 1311, 1314 (9th Cir. 1990). Accordingly, under Tenth Circuit precedent it is clear that, because tribal court jurisdiction is a federal question, and the CFR Court is a tribal court administered under Interior regulations, and federal courts are final arbiters of federal law, this Court must review *de novo* the CFR Court's conclusions of law to exceed its regulatory jurisdiction in the Enyart Case.

7

**II.     The CFR Court lacks subject matter jurisdiction over the Enyart Case and the Tribe because the Tribe never authorized the CFR Court to hear election or internal governmental disputes, and never explicitly waived its immunity.**

Generally, Interior established the CFR Court "to provide adequate machinery for the administration of justice for Indian tribes in those areas of Indian country where tribes retain jurisdiction over Indians that is exclusive of state jurisdiction, but where tribal courts have not been established to exercise that jurisdiction."  25 C.F.R. § 11.102.  The Eastern Shawnee Tribe's Court of Indian Offenses at the Miami Agency ("**CFR Court**") is one such court.  See 25 C.F.R. § 11.100(c)(3).  Because it was created by federal law, the CFR Court is required to follow the regulations that gave it life.  See Utahans for Better Transportation v. U.S. Department of Transportation, 305 F.3d 1152, 1165 (10th Cir. 2002) ("Agencies are under an obligation to follow their own regulations . . . .").

**A.   Federal regulations specify that tribes retain their sovereign immunity in the CFR Court absent an <u>explicit</u> waiver, which the Tribe has never made.**

The CFR Court lacked jurisdiction to exercise authority over the Tribe in the Enyart Case because the Tribe retains sovereign immunity from suits in the CFR Court absent an explicit waiver of sovereign immunity, as follows:

> A tribe may not be sued in a Court of Indian Offenses unless its tribal governing body *explicitly* waives its tribal immunity *by tribal resolution or ordinance*.

25 C.F.R. § 11.118(d) (emphasis added).  The Tribe retains immunity from suit as an attribute of its inherent sovereignty and waiver of such immunity cannot be implicit or implied.  See Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58-59 (1978) ("It is settled that a waiver of sovereign immunity cannot be implied but must be *unequivocally expressed*.") (Emphasis added).  Similarly, Interior's regulations governing the CFR Court prohibit it from hearing cases brought against the Tribe absent an explicit waiver of that immunity.

8

### B. The Tribe's Constitution does <u>not</u> explicitly waive the Tribe's immunity to suit in CFR Court as required by regulations.

The CFR Court relied on Article X of the Tribe's Constitution as a basis for assuming jurisdiction over the Tribe in the Enyart Case, which reads as follows:

> Until such time as the Business Committee determines that the Tribe is financially and otherwise prepared to maintain a separate Tribal Court, the judicial authority of the Tribe shall be exercised by the Court of Indian Offenses. *The jurisdiction of the Court of Indian Offenses shall include*, but not be limited to, criminal and *civil jurisdiction, including settlement of tribal disputes and interpretation of this Constitution and tribal enactments*.

Constitution, Article X (emphasis added). (*Constitution*, R. at Doc. 34-2, p. 31). However, the language of the Tribe's Constitution, adopted in 1994 (after Interior's more stringent regulations became effective)[3], is insufficient to serve as an explicit waiver of the Tribe's immunity. In other words, the waiver of tribal immunity must be "clearly stated and leaving nothing implied; distinctly expressed; definite" or "plain to see." WEBSTER'S NEW WORLD DICTIONARY 479 (3d Coll. Ed. 1988) (defining "explicit"). Nothing in this provision can be construed to meeting the regulatory requirement of § 11.118(d) that the Tribe "explicitly waives" immunity from suit.

Tribal constitutions, like all constitutions, set forth general principles. Interior was aware the constitutions of the 556 federally-recognized tribes are not always clear. Prior to adoption in 1993, the proposed regulations were first published for comment in 50 Fed. Reg. 43235 (Oct. 24, 1985). Interior recognized that just as "[t]he role of the Federal courts in adjudicating disputes concerning basic governmental issues has changed and developed over the history of the nation," similarly "[a]n Indian tribe may or may not wish to accord its [CFR] court the same role in resolving such issues that the Federal Government has accorded the Federal courts." 50 Fed. Reg. 43235. "In order to preserve such decisions for the tribes," Interior proposed that "absent

---

[3] Discussed *infra* at p.12.

9

tribal action [CFR Courts] will not adjudicate election disputes or question the decision of the tribal governing body" . . . and "tribal sovereign immunity in the [CFR Court] is not waived absent enactment of a tribal ordinance waiving sovereign immunity." 50 Fed. Reg. 43235. Interior drafted CFR Court regulations to ensure a tribe authorized a clear grant of jurisdiction and waiver of immunity under 25 C.F.R. § 11.118. Moreover, these two separate actions had to be approved by Interior before becoming enforceable in CFR Courts pursuant to 25 C.F.R. § 11.108 (providing upon approval of Ass't Sec. such ordinances supersede conflicting regulations and are enforceable). The Constitution never "explicitly waives" the Tribe's immunity from suit, 25 C.F.R. § 11.118(d), and cannot, then, be construed as a resolution or ordinance which overcomes the presumption in regulation that the Tribe retains immunity from suit.

The Tribe has never authorized, and Defendants cannot show, an explicit waiver allowing the Enyart Case or any similar actions against the Tribe's government. Absent such explicit waiver related to a matter like the Enyart Case, the CFR Court could not lawfully exercise authority over the Tribe. Because the regulations create a presumption that the Tribe retains immunity and the Tribe never authorized such a waiver by resolution or ordinance, the CFR Court lacked jurisdiction to hear the Enyart Case and Judge Douthitt should have dismissed it. Accordingly, this Court should declare the CFR Court exceeded its lawful jurisdiction and enjoin enforcement of orders issued in error against the Tribe.

### C. Federal regulations expressly bar the CFR Court from adjudicating internal tribal disputes as an unwarranted interference in tribal affairs without express authorization, which the Tribe did not provide.

Under Interior's regulations creating and governing the CFR Court, it has jurisdiction, "*except as otherwise provided in this title*," over civil cases arising within its territory, so long as at least one party is Indian, and the complaint is filed within the appropriate time frame. 25 C.F.R. § 11.116 (emphasis added). In that regard, certain regulations place fundamental limits

10

on the jurisdiction of the CFR Court.  See, e.g., 25 C.F.R. § 11.118 (proscribing CFR Court jurisdiction over Federal and State officials, and over internal governmental disputes, and affirming tribal sovereign immunity from suit).  These limits, including the Tribe's immunity from suit, function as conditions precedent to the CFR Court taking jurisdiction of a case against the Tribe's government, or resolving an internal governmental dispute and/or an election dispute.

Specifically, the CFR Court lacked jurisdiction to decide the Enyart Case under the following regulation:

> A Court of Indian Offense may not adjudicate an election dispute, take jurisdiction over a suit against a tribe, or adjudicate any internal tribal government dispute, *unless the relevant tribal governing body passes a resolution, ordinance, or referendum granting the court jurisdiction.*

25 C.F.R. § 11.118(b) (emphasis added).  This regulation prohibits the CFR Court from adjudicating internal governmental disputes or election disputes of the Tribe without express authorization to do so from the Tribe's governing body by resolution, ordinance, or referendum.

Interior mandated this jurisdictional limitation after significant consideration of improved regulations to govern the CFR Courts.  Consistent with Interior's 1985 statements, its comments in 1993 associated with the adoption of those improved CFR Court regulations declared that allowing CFR Courts to become involved in internal governmental disputes "without the consent of the tribal government . . . is an unwarranted interference in tribal affairs," and that "[u]nless the tribal government requests it, Courts of Indian Offenses should not become a competing forum for those matters." 58 Fed. Reg. 54406, 54407 (Oct. 21, 1993) (adopting 25 C.F.R. Part 11) [4] (emphasis added).  Interior's determination was consistent with long-standing federal common law.  See, e.g., Santa Clara Pueblo v. Martinez, 436 U.S. 49 (1978) (declining to

---

[4] The prohibition against CFR Courts adjudicating internal governmental disputes originally was codified at 25 C.F.R. § 11.104(b).  In 2008, this provision was renumbered as 25 C.F.R. § 11.118(b).  See 73 Fed. Reg. 39857, 39860 (July 11, 2008).

interfere in internal tribal government matters absent express tribal or Congressional authorization). The Enyart Case is precisely the sort of internal governmental dispute that Interior's regulations mandated the CFR Court avoid absent clear authorization by resolution, ordinance, or referendum.

### D. The Tribe's Constitution does <u>not</u> authorize the CFR Court to assume jurisdiction over election disputes, internal tribal government disputes, or suits against the Tribe as required by regulations.

The CFR Court's reliance on Article X of the Tribe's Constitution as a basis for assuming jurisdiction over the Enyart Case is misplaced. The constitutional provision relied upon reads:

> *The jurisdiction of the Court of Indian Offenses shall include*, but not be limited to, criminal and *civil jurisdiction, including settlement of tribal disputes and interpretation of this Constitution and tribal enactments*.

Constitution, Article X (emphasis added). (*Constitution*, R. at Doc. 34-2, p. 31). The language of the Tribe's Constitution, adopted in 1994 (after Interior's more stringent regulations became effective), is insufficient to serve as the CFR Court's grant of jurisdiction over internal governmental disputes under the regulations.

First, and most important, the Tribe's Constitution speaks generally of "tribal disputes," and does not authorize "*election disputes*," "*internal governmental* disputes," or "*taking jurisdiction over a suit against the Tribe*" which are prohibited by 25 C.F.R. § 11.118(b). Because Interior's regulations create a presumption that the CFR Court lacks jurisdiction over election disputes, internal governmental disputes, and suits against a tribe, the Tribe must declare, and the CFR Court must find, more than make an ambiguous reference to "tribal disputes" in the Tribe's Constitution in order to comply with Interior's regulations. The regulations oblige the Tribe to provide, and the CFR Court to find, an express grant of jurisdiction over such matters by resolution, ordinance or referendum in order to overcome such presumption and vest the CFR Court with requisite authority.

12

Second, notwithstanding the recognition by the Tribe's Constitution of the role of the CFR Court as the Tribal Court, the regulations in Part 11 still apply until the Tribe assumes responsibilities for providing judicial services.  See 25 C.F.R. § 11.104 (stating application of regulations until certain conditions are met by a tribe).  The Constitution establishes the CFR Court as the Tribal court, which is consistent with 25 C.F.R. § 11.100 (entitled Where are Court of Indian Offenses established?):  "Unless indicated otherwise in this title, these Courts of Indian Offenses are established *and the regulations in this part apply to the Indian country occupied by the following tribes: Eastern Shawnee Tribe.*  25 C.F.R. § 11.100(a) - (c)(3) (emphasis added).  The jurisdiction of the CFR Court encompasses criminal and civil jurisdiction which is defined and limited by Part 11 regulations.  See, e.g., 25 C.F.R. § 11.114 (defining criminal jurisdiction), § 11.116 (defining civil jurisdiction), and § 11.118 (stating jurisdictional limitations).

The regulations authorize a significant range of issues as appropriate for the "settlement of tribal disputes and interpretation of this Constitution and tribal enactments" as contemplated by Article X of the Constitution.[5]  However, unless further expanded by a resolution or ordinance of the Tribe, the CFR Court's jurisdictional authority over civil and criminal matters is circumscribed by the aforementioned regulations.  That is made clear by the heading for 25 CFR 11.118, "What are the jurisdictional limitations of the Court of Indian Offenses?".  It is Section 11.118(b) which requires a resolution, ordinance or referendum for the CFR Court to hear an election dispute, a suit against a tribe, or an internal tribal government dispute.  Article X of the

---

[5] Matters under the "civil jurisdiction" of CFR Courts when acting as tribal courts are specifically addressed in 25 C.F.R. Part 11, Subpart E—Civil Actions, Subpart F—Domestic Relations, Subpart G—Probate Proceedings, Subpart I—Children's Court , Subpart J—Juvenile Offender Procedure, Subpart K—Minor-in-Need-of-care Procedure, Subpart L—Child Protection and Domestic Violence Procedures. The regulations also specify the CFR Court's "criminal jurisdiction" in 25 C.F.R. Part 11, Subpart C—Criminal Procedure and Subpart D—Criminal Offenses.

Constitution simply fails to overcome the presumption in the regulations that CFR Courts do **not** have jurisdiction over such matters. The record fails to show that the Tribe has granted such authorization to the CFR Court because, neither the Plaintiffs in the Enyart Case, nor the Defendants in this action, have produced such resolution, ordinance, or referendum authorizing the CFR Court to adjudicate election disputes or internal tribal government disputes. Accordingly, this Court should declare the CFR Court exceeded its lawful jurisdiction and enjoin enforcement of orders against the Tribe issued in error.

### III. The Tribe meets the requirements for injunctive relief and will suffer irreparable harm unless Judge Douthitt and the CFR Court are enjoined.

Federal law, 28 U.S.C. § 2201, empowers this Court to declare the CFR Court lacked jurisdiction over the Enyart Case upon finding the CFR Court violated federal regulations and 28 U.S.C. § 2202 permits the Court to enjoin the enforcement of CFR Court orders issued in error. Injunctive relief, pursuant to Fed. R. Civ. P. 65, is appropriate in actions to prevent or halt the violation of a statute or regulation by an administrative agency. See, e.g., Patriot, Inc. v. Dept. of Housing and Urban Development, 963 F. Supp. 1, 4 (D.D.C. 1997) (granting injunction to prevent department from acting in derogation of plaintiff's interests and to preserve status quo). Absent injunctive relief from this Court, Judge Douthitt and the CFR Court intend to proceed with enforcing orders in Enyart v. Business Committee as remanded by the CFR Court's appellate panel.

Defendants' unlawful exercise of jurisdiction irreparably harms the Tribe. An Indian tribe's sovereign governmental authority to regulate the activities within its jurisdiction (e.g., conduct elections, authorize litigation, or waive immunity) is a unique and intangible power, the interference with which "constitutes irreparable harm." See Prairie Band of Potawatomi Indians v. Pierce, 253 F.3d 1234, 1250 (10th Cir. 2001), citing Seneca-Cayuga Tribe v. State of

14

Oklahoma, 874 F.2d 709, 716 (10th Cir. 1989) (affirming the use of injunction).  The CFR Court's unauthorized actions interfered with the Tribe's sovereignty.  Its orders directing tribal officials to curtail otherwise lawful activities are coercive.  Additionally, the CFR Court orders directing the Tribe to pay attorney fees to the opposing parties threaten tribal finances.  Any continuing and unlawful exercise of jurisdiction in the Enyart Case by the CFR Court without the requisite authorization of the Tribe interferes with the Tribe's sovereignty and threatens to further degrade the Tribal fisc.  Thus, injunctive relief is appropriate.

                                                Respectfully submitted,

**BY:** /s/ John G. Ghostbear

| | |
|---|---|
| WILLIAM R. NORMAN, OBA #14919 | JOHN G. GHOSTBEAR, OBA #3335 |
| KIRKE KICKINGBIRD, OBA #5003 | 8210 E. Regal Court, Suite 100 |
| HOBBS, STRAUS, DEAN & WALKER, LLP | Tulsa, OK  74133 |
| 101 Park Avenue, Suite 700 | 918-747-6351 – Telephone |
| Oklahoma City, OK  73102 | 918-747-6654 – Fax |
| 405-602-9425 – Telephone | ghostlaw@ghostlaw.net |
| 405-602-9426 – Fax | ATTORNEY FOR PLAINTIFF, EASTERN |
| wnorman@hobbsstraus.com | SHAWNEE TRIBE OF OKLAHOMA |
| kkickingbird@hobbsstraus.com | |
| OF COUNSEL TO PLAINTIFF, EASTERN | |
| SHAWNEE TRIBE OF OKLAHOMA | |

## CERTIFICATE OF SERVICE

      I certify that on the 18th day of January 2013, I electronically transmitted the foregoing PLAINTIFF'S OPENING BRIEF to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF Registrants:

    Thomas Scott Woodward, United States Attorney
    Cheryl L. Baber, Assistant United States Attorney, cheryl.baber@usdoj.gov
    Attorneys for Defendant, Judge Jon D. Douthitt

                                                **BY: /s/** John G. Ghostbear
                                                JOHN G. GHOSTBEAR