# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

EASTERN SHAWNEE TRIBE OF     )
OKLAHOMA,     )
     )
     Plaintiff,     )
     )
v.     )     **Case No. 11-CV-00675-JED-TLW**
     )
JON D. DOUTHITT, Magistrate Judge     )
of the Court of Indian Offenses, Miami,     )
Oklahoma, in his Official and     )
and Individual Capacities;     )
and the COURT OF INDIAN     )
OFFENSES FOR THE EASTERN     )
SHAWNEE TRIBE OF OKLAHOMA,     )
     )
     Defendants.     )

## DEFENDANTS' OPENING BRIEF

Respectfully submitted,

UNITED STATES OF AMERICA

DANNY C. WILLIAMS, SR.
United States Attorney

CHERYL L. BABER, OBA # 15745
Assistant United States Attorney
United States Attorney's Office NDOK
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119-1013
Telephone (918) 382-2700
Facsimile (918) 560-7948
cheryl.baber@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ...........................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.........................................................3

ARGUMENT ...................................................................................................................4

     I.     Defendants had jurisdiction to determine the internal tribal dispute
           at issue................................................................................................................4

           A.     The CFR Court did not exceed the authority granted by
                    federal regulation ..............................................................................6

           B.     The Tribal Constitution grants jurisdiction over tribal disputes
                    to the CFR Court and, thus, waives the Tribe's immunity when
                    such disputes arise............................................................................7

     II.     Deference to the CFR Court's determination of tribal law is warranted .......17

     III.     Neither declaratory nor injunctive relief is warranted ...................................15

CONCLUSION................................................................................................................18

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Buchanan v. Warley,*
    245 U.S. 60 (1917).....................................................................................................14

*Basil Cook Enterprises, Inc. v. St. Regis Mohawk Tribe,*
    117 F.3d 61 (2d Cir. 1997)........................................................................................12

*Columbian Fin. Corp. v. BancInsure, Inc.,*
    650 F.3d 1372 (10th Cir. 2011) ................................................................................16

*Consol. Rail Corp. v. City of Bayonne,*
    724 F. Supp. 320 (D.N.J. 1989) ................................................................................14

*Crandall v. City and Cnty. of Denver, Colo.,*
    594 F.3d 1231 (10th Cir. 2010) ................................................................................16

*Fisher v. Okla. Health Care Auth.,*
    335 F.3d 1175 (10th Cir. 2003) ................................................................................16

*Maryland Cas. Co. v. Pac. Coal & Oil Co.,*
    312 U.S. 270 (1941)...................................................................................................16

*MedImmune, Inc., v. Genentech Inc.,*
    549 U.S. 118 (2007)...................................................................................................15

*Osage Tribal Council v. U.S. Dep't of Labor,*
    187 F.3d 1174 (10th Cir. 1999) ..........................................................................10, 11

*Tillett v. Lujan,*
    931 F.2d 636 (10th Cir. 1991) ................................................................................4, 5

*United States v. City of Chester,*
    144 F.2d 415 (3d Cir. 1944).......................................................................................14

*United States v. Red Lake Band of Chippewa Indians,*
    827 F.2d 380 (8th Cir. 1987) ......................................................................................7

*Vizenor v. Babbitt,*
    927 F. Supp. 1193 (D. Minn. 1996)..........................................................................12

## U.S. CONSTITUTIONAL PROVISIONS

U.S. CONST. art. VI, cl. 2 ...................................................................................14

## STATUTES

Administrative Procedures Act, 5 U.S.C. § 702 ................................................4, 12

Administrative Procedures Act, 5 U.S.C. § 706 ....................................................12

25 U.S.C. § 13...................................................................................................4, 17

25 U.S.C. § 3621.....................................................................................................17

28 U.S.C. § 1331........................................................................................................4

Declaratory Judgment Act, 28 U.S.C. § 2201..................................................15, 16

28 U.S.C. § 2201(a) ...............................................................................................15

## REGULATIONS

25 C.F.R. Part 11.......................................................................................................4

25 C.F.R. § 11.108.....................................................................................................9

25 C.F.R. § 11.118............................................................................................6, 9, 15

25 C.F.R. § 11.118(b) ...............................................................................................9

25 C.F.R. § 11.118(d) .............................................................................................10

25 C.F.R. § 11.800.....................................................................................................4

50 Fed. Reg., 43235 (Oct. 24, 1985).........................................................................6

58 Fed. Reg., 54406 (Oct. 21, 1993).........................................................................7

58 Fed. Reg., 54407 (Oct. 21, 1993).........................................................................7

## SCHOLARLY AUTHORITIES

14A Charles Alan Wright & Arthur R. Miller, et al.,
*Federal Practice and Procedure* § 3691 (4th ed. 2011)
(Westlaw database updated April 2012) .............................................................................12

Timothy W. Joranko, *Exhaustion of Tribal Remedies in the Lower Courts After
National Farmers Union and Iowa Mutual:  Toward a Consistent Treatment
of Tribal Courts by the Federal Judicial System*, 78 Minn. L. Rev. 259, 299
(Dec. 1993) ........................................................................................................................13

Frank R. Pommersheim, *the Crucible of Sovereignty:  Analyzing Issues of Tribal
Jurisdiction*, 31 Ariz. L. Rev. 329, 361 (April 1989) ..........................................................13

## TREATISES

*Cohen's Handbook of Federal Indian Law* §7.04 (Matthew Bender 2009) ..........................12

## OTHER AUTHORITIES

Constitution of the Eastern Shawnee Tribe of Oklahoma,
        (Ratified June 17, 1999, Resolution No. 02199-R-01) .............................................*passim*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| EASTERN SHAWNEE TRIBE OF OKLAHOMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 11-CV-00675-JED-TLW** |
| | ) | |
| JON D. DOUTHITT, Magistrate Judge of the Court of Indian Offenses, Miami, Oklahoma, in his Official and and Individual Capacities; and the COURT OF INDIAN OFFENSES FOR THE EASTERN SHAWNEE TRIBE OF OKLAHOMA, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPENING BRIEF

The Defendants Jon D. Douthitt, Magistrate Judge of the Court of Indian Offenses, Miami, Oklahoma, in his Official[1] Capacity, and the Court of Indian Offenses for the Shawnee Tribe of Oklahoma, hereby submit this opening brief pursuant to the Court's Scheduling Order. Dkt. # 31.

### Introduction

The sole issue in this matter is whether Defendants, the four judges of the Court of Indian Offenses for the Eastern Shawnee Tribe of Oklahoma (the magistrate and the three-member appellate panel), had jurisdiction to adjudicate a case between tribal members and the tribal governing body. In the underling suit, Defendants ruled against Plaintiff, the Eastern Shawnee

---

[1] The Court dismissed Defendant Jon D. Douthitt in his individual capacity on December 20, 2011. Order, Dkt. # 8.

1

Tribe of Oklahoma ("ESTO" or "Tribe")[2] on the merits of the case.  The merits involved a dispute over whether elected officials of the Tribe (including those who were part of the tribal governing body) could be compensated for additional work they performed for the Tribe in unelected capacities despite any potential conflict of interest.  Plaintiff challenges those findings here by asking this Court to find that the Defendant judges wrongfully determined Tribal law and the scope of their own jurisdiction.

Plaintiff's allegations rest on the erroneous assumption that Tribal members have not granted jurisdiction to their own court over this type of dispute and that Plaintiff Business Committee members did not waive their tribal immunity.  The facts show that the Tribe's general membership adopted a Tribal Constitution, which was passed by resolution of the Tribe's governing body, granting that jurisdiction and waiving the Tribe's immunity.  Plaintiff would have this Court ignore the relevant provisions of the Tribal Constitution, and the careful consideration given them by the Defendant judges.  Plaintiff's challenge, if successful, would effectively overturn the findings of the Defendant judges, sanction wrongful conduct by the Tribe's governing body, and leave aggrieved Tribal members without an adequate remedy or forum for their grievances.  Ultimately, it would also serve to undermine tribal sovereignty.

---

[2] As set forth in the Complaint, Plaintiff is the ESTO Business Committee, the Tribe's governing body.  In the underlying suit, six Tribal members initially sued ESTO Chief Glenna Wallace and the ESTO Business Committee.  *See Enyart v. Wallace*, No. CIV-2009-M05, R., Dkt. # 32-1 at 31.  Chief Wallace opposed the Business Committee's actions.  *See* R., Dkt. # 32-4, at 29-34, and the appellate division of the CFR Court renamed the case *Enyart v. Business Committee,* showing Chief Wallace as Respondent/Appellee in the caption of its Memorandum Opinion.  R., Dkt. # 35-3.

### Factual and Procedural Background

In 2008, the Tribal membership voted, pursuant to an initiative measure, to prohibit the Tribe's elected officials from receiving compensation for work they performed in an unelected capacity.  *See* Administrative Record (hereinafter "R"), Dkt. # 32-1 at 32-33.[3]  In response, the Tribal Business Committee (which included at least two officials who worked for the Tribe in unofficial capacities as well) improperly put forth a referendum to overturn the initiative.  *See* R., Dkt. # 32-1 at 33; Dkt. # 32-4 at 11-12 (¶ 14); Dkt. # 35-3 at 12.  Tribal members approved the referendum.  *See* R., Dkt. # 32-1 at 33.  The six Tribal members who had originally proposed the initiative challenged the actions of the Business Committee and took the matter to the Tribe's court, where they obtained a judgment in their favor from the magistrate judge.  *See* R., Dkt. ## 33-2, 33-1, 33, 32-4, 32-3, 32-2, 32-1.[4]  The Business Committee appealed to the Tribe's appellate court and lost.  R., Dkt. ## 35-3, 35-2, 35-1, 35, 34-4, 34-3, 34-2, 34-1.  In ruling on behalf of the six Tribal members, the Tribe's court pointed to the language of the Tribe's own Constitution granting jurisdiction to the Tribe's court over internal tribal disputes.  R., Dkt. # 35-3 at 6-10.

The Tribal Business Committee, as Plaintiff Eastern Shawnee Tribe of Oklahoma, then brought the matter to this Court -- not against the six Tribal members who prevailed in the

---

[3] Docket number and pagination references to the Record reflect the document and pagination provided by the District Court's CM/ECF system at the top of each page in the Record.

[4] As explained in the Errata, Dkt. # 38, the record from the CFR Court is kept in reverse chronological order, but did not appear in the District Court's CM/ECF system in that order when several documents were submitted at a time so as to comply with the filing restrictions of the system.  If the documents appearing between docket numbers 32 and 35 are reorganized in reverse chronological order, the underlying documents of the CFR Court appear in the order that they are kept.

Tribe's court, but against the magistrate judge of the Tribe's court and the three judges of the appellate panel who affirmed the magistrate judge's opinion.  Compl., Dkt. # 2.  As these judges are deemed federal employees acting in their official capacity due to their employment by the U.S. Department of the Interior, the United States entered an appearance to represent them.  Dkt. # 15.  The United States then filed a motion to dismiss based on lack of subject matter jurisdiction, arguing in part that these judges were entitled to sovereign immunity from suit.  Dkt. # 16.  The Court denied the motion, finding that the Complaint raised a federal question as to the scope of the Defendant's jurisdiction and, thus, the Court had subject matter jurisdiction to hear the case under 28 U.S.C. § 1331.  *See* Opinion and Order, dated August 22, 2012.  Dkt. # 26 at 8. The Court also found that the Administrative Procedures Act, 5 U.S.C. § 702, provided a waiver of sovereign immunity allowing the Plaintiff to proceed with its claims against Defendants.  *Id*. at 12.

## Argument

## I.  DEFENDANTS HAD JURISDICTION TO DETERMINE THE INTERNAL TRIBAL DISPUTE AT ISSUE

As set forth in the Complaint, the Court of Indian Offenses for the Eastern Shawnee Tribe of Oklahoma was established by the Department of the Interior pursuant to 25 C.F.R. Part 11.  It is what is known as a "CFR Court" created by Bureau of Indian Affairs (BIA) regulations to preside over tribal matters in the absence of a court established by a tribal government.  *See Tillett v. Lujan*, 931 F.2d 636, 638 (10th Cir. 1991); *see also* 25 C.F.R. § 11.800 (jurisdiction of the Court of Indian Offenses' appellate division).  The *Tillett* court explained that CFR courts "retain some characteristics of an agency of the federal government," but they "also function as

4

tribal courts; they constitute the judicial forum through which the tribe can exercise its jurisdiction until such time as the tribe adopts a formal law and order code." 931 F.2d at 640.

In 2009, Charles Enyart and five other individual members of the Tribe (the "Enyart Plaintiffs") filed suit in the CFR Court after the initiative and referendum votes described above. R., Dkt. # 32-1 at 32-33. They alleged that procedural irregularities occurred in a special meeting of the chief and the Tribe's governing body, the "Business Committee," and they essentially asked the CFR Court to strike the referendum resulting from that meeting. They also alleged a conflict of interest among the Business Committee members. The specific claims of the Enyart Plaintiffs in the underlying lawsuit were:

> (1)    The Tribe should be enjoined from enforcing the referendum and its results due to failure to observe the public notice requirements of the Tribal Constitution, and mandate and/or prohibition should issue regarding the same; . . .

> (2)    The Tribe should be enjoined from enforcing the referendum and its results due to violation of conflict of interest provisions of the Tribal Constitution and mandate and/or prohibition should issue regarding the same; . . .

> (3)    The Tribe should be required to enforce the terms of ordinance passed by the Tribe on June 14, 2008, which ordinance was certified by the tribal election board on June 26th, 2008. The Court should issue a mandate to the Chief and Business Committee requiring compliance for the applicable term of the ordinance, and for the recovery of any funds unlawfully paid in violation of the terms of the ordinance.

R., Dkt. # 32-1 at 34-36. These claims involve internal tribal or intra-tribal disputes, which, pursuant to federal regulations, CFR courts may address if their tribal governing body permits.

5

**A.      The CFR Court did not exceed the authority granted by federal regulation.**

The federal regulations at issue here are found at 25 C.F.R. § 11.118, which provide, in

relevant part, that

> (b) A court of Indian Offenses may not adjudicate an election dispute, take
> jurisdiction over a suit against a tribe, or adjudicate any internal tribal government
> dispute, unless the relevant tribal government body passes a resolution, ordinance,
> or referendum granting the court jurisdiction.
>
> * * *
>
> (d) A tribe may not be sued in a Court of Indian Offenses unless its tribal
> governing body explicitly waives its tribal immunity by tribal resolution or
> ordinance.

*Id*. (emphasis added).

In 1984, the Department of the Interior published a proposed rule relevant to the

regulations governing CFR Courts.  The Department stated:

> Some courts of Indian offenses have adjudicated disputes concerning basic
> issues of tribal government, such as who may exercise tribal authority and what is
> the extent of a particular tribal official's authority.  The role of the Federal courts
> in adjudicating disputes concerning basic governmental issues has changed and
> developed over the history of the nation.  An Indian tribe may or may not wish to
> accord its court the same role in resolving such issues that the Federal
> Government has accorded the Federal courts.
>       In order to preserve such decisions for the tribes, it is proposed to provide
> that, absent tribal action, courts of Indian offenses will not adjudicate election
> disputes or question the decision of the tribal governing body concerning the
> distribution of tribal authority among tribal officials.  The proposed rule provides
> however, that the tribal governing body may confer such jurisdiction on the court
> of Indian offenses.   The proposed rule also provides that tribal sovereign
> immunity in the court of Indian offenses is not waived absent enactment of a
> tribal ordinance waiving sovereign immunity.

50 Fed. Reg., 43235 (Oct. 24, 1985).  The Eastern Shawnee Tribe of Oklahoma wished to accord

its court the same role in resolving basic governmental issues that the Federal Government

accorded the Federal courts, and the Tribe did so by constitutional amendment in 1999.  As more

6

fully discussed below, Tribal action was taken in this case when the ESTO membership ratified the amendment.  The ESTO Business Committee further conferred jurisdiction on the court of Indian offenses by adopting a resolution to approve the amended Constitution.  A resolution passed by the Business Committee, by approving the amended Constitution ratified by the Tribal membership, waived tribal sovereign immunity for tribal disputes.

The Department of the Interior made other comments in the regulatory history when the final rule was published in 1993:

> Several comments objected to the provision prohibiting Courts of Indian Offenses from adjudicating tribal government disputes absent a tribal council resolution or ordinance conferring such jurisdiction.  They argue that these courts should be regarded as part of the tribal government and that resolution of such disputes by these courts is preferable to resolution by the BIA.
> It is clear however, that Courts of Indian Offenses are part of the Federal Government.  United States v. Red Lake Band of Chippewa Indians, 827 F.2d 380, 383 (8th Cir. 1987), cert. denied 108 S.Ct. 1109 (1988).  Their involvement, without the consent of the tribal government, in tribal government disputes, is an unwarranted interference in tribal affairs.  Unless the tribal government requests it, Court of Indian Offenses should not become a competing forum for those matters.

58 Fed. Reg., 54406, 54407 (Oct. 21, 1993).   The Eastern Shawnee Tribe of Oklahoma, apparently recognizing that, absent tribal action, its CFR court would not be regarded as part of the tribal government, took action by altering its Constitution to explicitly establish its CFR Court as part of its tribal government.  As shown below, the Tribal government consented to the involvement of the CFR Courts in tribal government disputes and, in fact, requested it by adopting a resolution and approving an amended Constitution ratified by the ESTO people.

**B.     The Tribal Constitution grants jurisdiction over tribal disputes to the CFR Court and, thus, waives the Tribe's immunity when such disputes arise.**

The ESTO Constitution provides, in Article X, Section 1:

> Until such time as the Business Committee determines that the Tribe is financially and otherwise prepared to maintain a separate Tribal Court, the judicial authority of the Tribe shall be exercised by the Court of Indian Offenses. The jurisdiction of the Court of Indian Offenses shall include, but not be limited to, criminal and civil jurisdiction, including settlement of tribal disputes and interpretation of this Constitution and tribal enactments.

R., Dkt. # 32-2 at 18. The preamble and documents attached to the Tribal Constitution indicate that the Tribe deemed this version of their Constitution an "Amendment" superseding an earlier version approved on November 7, 1939. *Id*. # 32-2, at 11, 26-27. The Amendment was ratified by vote of the Tribe on June 17, 1999. *Id*. at 26. The Certificate of Approval indicates that the BIA approved the amended version "as set forth in Resolution No. 02199-R-01 adopted by the Business Committee of the Eastern Shawnee Tribe of Oklahoma on February 19, 1999." *Id*. at 27.

The six tribal members who brought suit quoted Article X, Section 1 in their petition before the CFR Court. R., Dkt. # 32-1, at 32. The Business Committee responded with a Special Appearance and Motion to Quash and Dismiss. *Id*. at 22. The tribal members replied solely to the jurisdictional issue. *See* Petitioner's Reply to Respondents' Special Appearance and Motion to Quash and Dismiss, filed July 8, 2009. R., Dkt. # 32-2 at 8. Judge Douthitt heard oral argument and issued the following ruling: "The Tribal Constitution, Article X, Section 1 grants full judicial authority to the C.F.R. Court. Court of Indian Offenses, Case No. CIV 05-M01P Enyart v. Eastern Shawnee Election Board et al is in accord." *See* Court Minute, filed July 23, 2009, and Fax Cover Sheet, filed July 28, 2009. R., Dkt. # 32-2 at 4, 6. The Business Committee filed a Motion for New Trial on the jurisdictional issue, which the judge reset for hearing and subsequently overruled. *See* Motion for New Trial, filed August 10, 2009; R., Dkt. # 32-3 at 59-60; Order, filed August 19, 2009 (*id*. at 57); and Court Minute, filed September 10,

8

2009.  *Id*. at 51.  The Court then set the remaining issues for trial, culminating in the April 28, 2011 Order challenged by Plaintiff.  R., Dkt. # 32-4 at 5.

In the April 28, 2011 Order, Defendant Jon D. Douthitt found that he had jurisdiction of the parties and the subject matter.  R., Dkt. #32-4 at 5.  He explicitly reaffirmed his findings and orders of jurisdiction in two subsequent orders addressing the Business Committee's motion for new trial and motion for stay.  R., Dkt. # 33-1 at 5, 17.  Thus, Judge Douthitt addressed the jurisdictional issues and ruled upon the merits of the matter, and the appellate court judges affirmed after oral argument and extensive briefing.

In addition to the briefs filed by the tribal members and the Business Committee, Chief Wallace filed an appellate brief.  *See* R., Dkt. # 35-2 at 2-31.  Chief Wallace summarized a portion of her argument in this manner:  "The Constitution of the Eastern Shawnee Tribe established three branches of the tribal government.  As the United States Supreme Court has stated on numerous occasions, the Tribal Court is a vital part of tribal government and, most often, is the proper forum in which to resolve tribal disputes and interpret tribal enactments and its constitution."  *Id*. at 29.

On September 13, 2011, the Court of Indian Appeals issued its Memorandum Opinion. R., Dkt. # 35-3 at 4-14.  By reference to Article 10, Section 1 of the ESTO Constitution, the appellate court stated:  "We believe this language is sufficient to satisfy the conditions of subsection (b) of 25 C.F.R. 11.118."  R., Dkt. # 35-3 at 6.  The appellate court found further support for its position in 25 C.F.R. § 11.108, "which states that the tribal governing body may enact ordinances which, when approved by the Secretary of the Interior are enforceable in Courts of Indian Offenses."  R., Dkt. # 35-3 at 6-7.  The appellate court judges also noted that the same

jurisdictional challenge was addressed in an earlier case before the CFR Court in 2006 filed by

the ESTO chief at the time.  The appellate court's quote from the earlier case bears repeating:

> The Tribal Court is vested with authority to decide tribal disputes.  This matter qualifies as a tribal dispute, and we believe, is exactly what the framers of the Constitution had in mind when the aforementioned section of the Constitution was drafted and adopted.  Since the court is the duly designated forum for handling tribal disputes, it stands to reason that Sovereign Immunity has been waived with regard to suits initiated which are solely designed to settle such a dispute.  ***To hold otherwise would severely cripple tribal government by eliminating any avenue for such disputes to be resolved.***  We hold that the Tribe has waived its Sovereign Immunity with regard to this cause of action.

*Id*. at 7 (emphasis added) (*quoting Enyart v. Eastern Shawnee Election Bd., et al*., CIV-05-M01P

(Court of Indian Offenses, App. Div. Opinion March 15, 2006)) (*see* R., 34-2 at 43).[5]

The appellate court then addressed the Business Committee's contention that the Tribe

had never explicitly waived tribal immunity as envisioned in 25 C.F.R. § 11.118(d).  The

appellate court observed:  "The problem with Appellant's argument is it would render the

Constitution's grant of jurisdiction to resolve tribal disputes meaningless.  Appellants do not

point to any document which indicates the people in passing the Constitution intended this

result."  R., Dkt. # 35-3 at 8.  The appellate court relied on a Tenth Circuit case, *Osage Tribal*

*Council v. U.S. Dep't of Labor*, 187 F.3d 1174 (10th Cir. 1999), to show the degree of

explicitness required to effect a waiver of tribal immunity.  R., Dkt. # 35-3 at 8-9.  The *Osage*

*Tribal Council* court noted that courts considering tribal immunity waivers "have only found

---

[5] Plaintiff has argued that its Election Board hears election disputes and, since the validity of the Referendum at issue in this dispute was affirmed by the Election Board, Defendants' exercise of jurisdiction was unlawful.  *See* Resp. Br., Dkt. # 17, at 12.  However, the Election Board merely certified the results of the Referendum and denied a challenge to the results.  In the 2006 *Enyart* case, the CFR Court explained with regard to a recall election that the Election Board is not the appropriate Tribal entity to hear allegations of unlawful or improper conduct by elected Tribal officials.  That is the role of the Tribal Court.  *See Enyart*, CIV-05-M01P at 6-7. R., Dkt. # 34-2 at 45-46.

statutory language inadequately explicit when there was no language specifically establishing the cause of action at issue." 187 F.3d at 1181 (citations omitted). The Tenth Circuit opined that a statement of intent is sufficient to waive tribal immunity. *Id*. at 1182.

Relying on the *Osage Tribal Council* case in part, the ESTO Court of Indian Appeals concluded: "The Eastern Shawnee Constitution explicitly states the Court is granted jurisdiction to resolve tribal disputes. We find this to be a sufficient waiver of immunity, as tribal disputes can [ ] only be created by and vis-à-vis tribal officials, branches and entities - the Respondents in this case." R., Dkt. # 35-3 at 9. The appellate panel then pointed out that members of the Business Committee were not entitled otherwise to claim tribal immunity because their actions were taken "in total disregard of the Eastern Shawnee Constitution and laws as well as rules of procedure adopted by the Business Committee," and thus, "outside any authority granted to them." *Id*. at 9-10.

This decision by the Court of Indian Appeals is sound and should not be overturned. ESTO adopted its Constitution by resolution. To require, as Plaintiff argues, a separate resolution waiving tribal immunity whenever members of the Tribe seek to challenge actions of their Business Committee would allow manipulation of the system, as no tribal governing body would waive such immunity where tribal members allege unconstitutional conduct by the governing body itself. Tribal members granted jurisdiction to the CFR Court to settle tribal disputes and interpret their Constitution and tribal enactments. They chose this means of holding their governing body to account.

11

## II.     DEFERENCE TO THE CFR COURT'S DETERMINATION OF TRIBAL LAW IS WARRANTED

Several courts and scholars have addressed the standard of review for a federal court reviewing cases involving a tribal court's determination of tribal law.  As the seminal treatise on Indian law sets forth:

> Federal courts are required to defer to tribal court determinations of tribal law. Just as state courts are the final arbiters of the meaning of state law, so are tribal courts the final arbiters of the meaning of tribal law.  While the Supreme Court has held that the breadth of tribal court jurisdiction is a federal question, it is for the tribal court to determine both what its law is and the scope of its own jurisdiction.  On review in the federal courts, the only question is whether the tribal court had the authority to adjudicate the case.  While this federal question can be addressed de novo by the federal court,[6] it is the job of the tribal courts to interpret the meaning of tribal law.

*Cohen's Handbook of Federal Indian Law* § 7.04 (Matthew Bender 2009) (endnotes omitted); *see generally* 14A Charles Alan Wright & Arthur R. Miller, et al., *Federal Practice and Procedure* § 3691 (4th ed. 2011) (Westlaw database updated December 2012) ("Federal district courts often extend deference to Indian tribal courts, in the interests of comity and tribal sovereignty, although the relationship among tribal law, federal statutes, and federal common law often is very complex . . . ."); *Basil Cook Enterprises, Inc. v. St. Regis Mohawk Tribe*, 117 F.3d 61 (2d Cir. 1997) ("Federal courts, as a general matter, lack competence to decide matters of tribal law . . . ."); *Vizenor v. Babbitt*, 927 F. Supp. 1193, 1205 n. 12 (D. Minn. 1996) (Rights

---

6 Arguably, the standard of review could be deemed the "arbitrary and capricious" standard set forth in the Administrative Procedures Act, 5 U.S.C. § 706, given that the Court ruled the Act applicable to a determination that the Defendants had waived their sovereign immunity from suit under section 702 of the Act.  *See* Order and Opinion, August 22, 2012, Dkt. # 26.  Clearly, the Defendant judges' determination that they had jurisdiction, based as it was on an interpretation of provisions in their Tribal Constitution, cannot be deemed arbitrary and capricious.  Nor can it be deemed error by the Defendants if the standard of review is addressed de novo, as argued herein.

arising out of a tribe's constitution "must be determined at the tribal level, as federal courts do not have jurisdiction to interpret a tribal constitution or tribal laws.")

One scholar explained the need for deference by reference to review of similar state court jurisdictional questions:

> Thus, the rule applied when challenging tribal court jurisdiction in federal court should parallel the rule applied by federal courts when interpreting state "long-arm" statutes in diversity cases. In such cases, the state court's interpretation of its own state "long-arm" statute binds the federal court, which then applies federal interpretations of applicable constitutional jurisdictional limitations. Similarly, when reviewing tribal jurisdiction, the tribal court's interpretation of tribal law should bind the federal court, which should only review the federal law questions de novo.

Timothy W. Joranko, *Exhaustion of Tribal Remedies in the Lower Courts After National Farmers Union and Iowa Mutual: Toward a Consistent Treatment of Tribal Courts by the Federal Judicial System,* 78 Minn. L. Rev. 259, 299 (Dec. 1993). Another has opined: "Tribal courts ought to be able to interpret and declare what tribal law is, for if tribal sovereignty and self-determination mean anything, they mean the authority to declare and interpret the law that will govern in tribal forums." Frank R. Pommersheim, *the Crucible of Sovereignty: Analyzing Issues of Tribal Jurisdiction*, 31 Ariz. L. Rev. 329, 361 (April 1989). The CFR Court interpreted the ESTO Constitution and declared that the Tribe had granted jurisdiction to it over tribal disputes and that the Tribe had waived its sovereign immunity in such matters. Deference to their decision is warranted under the circumstances of this case.

In its Opinion and Order dated August 22, 2012, this Court specifically noted: "To the extent that resolution of this matter would require interpretation of purely Tribal law, the Court will defer to the findings of the CFR Court when resolving the federal question raised in plaintiff's complaint." *Id.* at 8. Plaintiff ignores the findings of the CFR Court requiring

interpretation of purely Tribal law and the import of the Tribe's Constitutional provision, alleging that the tribal governing body cannot be held to account for wrongdoing because the tribal governing body itself has not passed a law specifically called an ordinance, resolution, or referendum permitting suit based on the specific dispute at issue.  This allegation would not be countenanced if asserted in a case involving a provision of the United States Constitution vis-à-vis a municipal ordinance, state referenda, or even Congressional resolutions and the like.

The Supremacy Clause of the United States Constitution provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2.  It is well-established that lesser laws are preempted.  *See, e.g.,* *Buchanan v. Warley*, 245 U.S. 60, 74, 38 S.Ct. 16, 18 (1917) ("[T]he police power, broad as it is, cannot justify the passage of a law or ordinance which runs counter to the limitations of the federal Constitution . . ."); *United States v. City of Chester*, 144 F.2d 415, 420 (3d Cir. 1944) ("A state statute, a local enactment, regulation, or a city ordinance, even if based on valid police powers of a State, must yield in case of direct conflict with exercise by the Government of the United States of any power it possesses under the Constitution."); *Consol. Rail Corp. v. City of Bayonne*, 724 F. Supp. 320, 326-31 (D.N.J. 1989) (City's enforcement of resolution setting limit on number of rail cars that could be on a site was preempted by the federal Transportation Safety Act; were city allowed to enforce its resolution, the effects would be in conflict with federal law.).  Similarly, one would expect that the broad provisions of the ESTO Constitution preempt a specific ordinance, resolution, or referendum to the contrary.  To do so would turn the well-

established hierarchy of legal authority on its head: city ordinances, state referenda, and congressional resolutions do not trump the U.S. Constitution, *i.e.*, the "supreme law of the land").

More importantly, Plaintiff's allegations would thwart the will of the ESTO people in enacting the law that is their "supreme law of the land" by misconstruing a federal regulation. The specific subsections of 25 U.S.C. § 11.118 require a CFR Court to analyze whether a tribe has waived its sovereign immunity or clearly authorized the CFR Court to adjudicate election disputes or internal tribal disputes. To do that, Defendants in this action appropriately resorted to Tribal law embodied in the language of the Tribal Constitution. In a thoughtful opinion, the appellate division of the CFR court determined that the Tribal Constitution's grant of jurisdiction over tribal disputes met the requirements of 25 C.F.R. § 11.118. The Court should allow this determination to stand.

## III. NEITHER DECLARATORY NOR INJUNCTIVE RELIEF IS WARANTED

The relief requested by Plaintiff is both declaratory and injunctive. Neither is warranted under the unique circumstances of this case. The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has summarized what is meant by an "actual controversy" thus: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc., v. Genentech Inc.*, 549

U.S. 118, 126, 127, 127 S.Ct. 764, 770 (U.S. 2007) (emphasis added) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co*., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)); *see Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011).

Here, the actual controversy was between Tribal members and the Tribal Business Committee. The Tribal members are not parties to this suit in federal court. The Defendant judges and Plaintiff Business Committee have no adverse legal interests, and there is no actual controversy between them. In general, a litigant does not create a fight with a court by challenging its jurisdiction and a court does not create a controversy with the litigants before it merely by assuming jurisdiction over the litigation. While this Court may rule that the CFR Court properly exercised its jurisdiction – or not – technically, a declaratory judgment pursuant to 28 U.S.C. § 2201 is not appropriate.

As for injunctive relief, "[a] party requesting a permanent injunction bears the burden of showing:  (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Crandall v. City and Cnty. of Denver, Colo*., 594 F.3d 1231 1235-36 (10th Cir. 2010) (quoting *Fisher v. Okla. Health Care Auth*., 335 F.3d 1175, 1180 (10th Cir. 2003)).  In the Complaint, Plaintiff alleged that it had a substantial likelihood of success on the merits -- not actual success on the merits. Compl., Dkt. # 2, at 12, 14.  Plaintiff should have neither a substantial likelihood of success nor actual success on the merits for the reasons set forth in Defendants' briefing.

As to the second factor required for injunctive relief requested, Plaintiff alleged that Defendants' exercise of jurisdiction irreparably harms the Tribe by interfering with the Tribe's

political affairs, and by invading and threatening to further degrade the Tribal fisc."  Compl.,

Dkt. # 2, at 11, 13-14.  Defendant judges did not interfere with the Tribe's political affairs – they

simply performed their duty when asked to resolve the legal matter brought to them by Tribal

members.  The harm to Plaintiff, if any, was merely eliminating the ability of the Tribe's elected

officials – including those on the Business Committee, to invade the Tribal fisc by taking

compensation from the Tribe for other work they performed in an unelected capacity.  With no

regard to the apparent conflict of interest in holding dual employment positions in the Tribe,

Business Committee members could have made decisions which would directly benefit

themselves, either monetarily or otherwise, as unelected employees of various other Tribal

components.  These actions by Business Committee members -- not any actions by the CFR

Court judges -- invaded or threatened to invade the tribal fisc.[7]  Plaintiff has not shown how the

Defendant judges "invaded or threatening to further invade the tribal fisc."  Plaintiff has shown

no irreparable harm.

        Plaintiff also claims that the threatened injury to them outweighs the harm that the

injunction may cause the Defendant judges.  *See* Compl., Dkt. # 2, at 11, 14.  In support of this

allegation, Plaintiff asserts that the "requested injunctive relief merely requires the Defendants

not to exceed the limits of their authority."  *Id*.  This argument overlooks the harm to the Tribe's

chosen judicial system and the Tribal members attempting to hold their elected officials

accountable by invoking the laws they enacted.  To subject these judges to accusations of

wrongdoing in a federal lawsuit, merely for determining their jurisdiction in accordance with

tribal law, is harmful to their reputations and to recruitment efforts to employ fair and impartial

_____

        [7] Incidentally, the Defendant judges are paid by the Bureau of Indian Affairs – not by the
Tribe.  *See* 25 U.S.C. §§ 13, 3621.

judges to preside in their court system.  Indeed, a secondary harm of an injunction in this matter is the disincentive it would create for those who might wish to serve as CFR Court judges to apply for the position, and it could serve to unfairly constrain the actions of those judges and unduly influence the outcome of their rulings when they are called upon to determine their own jurisdiction.

Finally, Plaintiff alleges that the injunctive relief requested is not adverse to the public interest because the protection of tribal sovereign authority and tribal immunity are in the public interest.  *Id*. at 11, 13.  Plaintiff equates protection of tribal sovereign authority with protection of the Business Committee members who improperly put forth a referendum as they sought to protect the income such members could obtain through unelected employment with the Tribe.  Plaintiff equates tribal immunity with immunity from suit for the administrative and legislative branches of their Tribe, effectively shielding Business Committee members from allegations of wrongdoing by the Tribal members whom they were elected to represent.  These equations are fundamentally flawed.  The public interest at stake here is not the self-interest of Business Committee members; it is the public interest of the Tribe and all its members.  Accordingly, the injunctive relief requested is adverse the public interest if that interest is deemed the will of the ESTO people, upholding their laws, promoting good government, and protecting their tribal sovereignty.

## Conclusion

The ESTO Constitution granted Defendant judges the authority and the jurisdiction to determine the internal tribal dispute at issue in this matter, and the ESTO Business Committee, its tribal governing body, thereby waived its immunity from suit.  Accordingly, Defendants Jon

D. Douthitt and the Court of Indian Offenses for the Eastern Shawnee Tribe of Oklahoma request that the Court deny the injunctive relief requested by Plaintiff, enter judgment in favor of Defendants, and grant Defendants all relief to which they are entitled.

Respectfully submitted,

UNITED STATES OF AMERICA

DANNY C. WILLIAMS, SR.
United States Attorney


/s/Cheryl L. Baber
CHERYL L. BABER, OBA # 15745
Assistant United States Attorney
United States Attorney's Office NDOK
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119-1013
Telephone (918) 382-2700
Facsimile (918) 560-7948
cheryl.baber@usdoj.gov

19

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2012, I electronically transmitted the foregoing

DEFENDANTS' OPENING BRIEF to the Clerk of Court using the ECF System for filing and

transmittal of a Notice of Electronic Filing to the following ECF registrants:

John G. Ghostbear, ghostlaw@ghostlaw.net
Keron K. Kickingbird, kkickingbird@hobbsstraus.com
William R. Norman, Jr., wnorman@hobbsstraus.com
Attorneys for Plaintiff Eastern Shawnee Tribe of Oklahoma


/s/Carie McWilliams
CARIE MCWILLIAMS
Legal Assistant

CLB/csm

20